UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal No. 1:21-cr-10118-IT |
| JOSE LARIOS, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER
May 28, 2021

TALWANI, D.J.

After Defendant Jose Larios was ordered released with conditions by the Magistrate Judge, the government appealed that decision. Gov. Second Mot. to Revoke Release [#17]. For the reasons that follow, the Motion [#17] is allowed and Defendant is ordered detained.

I.   Background

On April 15, 2021, Larios and four others were indicted for conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine and 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. § 846, and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). Indictment [#1].[1] With respect to the § 846 violation, the Indictment [#1] alleges that 400 grams or more of a substance containing a detectable amount of fentanyl is attributable to Larios.

On May 19, 2021, Larios was arrested in the Central District of California, and appeared before a Magistrate Judge in that district for an initial appearance. Probation and Pretrial Services recommended that Larios be released with conditions; the government moved for Larios to be detained pending trial, Gov. First Mot. to Revoke Release 2 [#17-3]; see also Detention Hearing

---

[1] One of Larios' codefendants was charged only with the violation of 21 U.S.C. § 846; another codefendant was charged only with the violation of 18 U.S.C § 1956(h).

Transcript ("Tr.") 8:13-21 [#37]; and the Magistrate Judge held a detention hearing. See Gov. First

Mot. To Revoke Release 2 [#17-3]; see also Tr. [#37].

 Defendant was represented by counsel at the detention hearing. The government proffered

the following evidence through the testimony of Drug Enforcement Agency ("DEA") Agent Mark

Tully: the DEA's investigation into Larios began in October 2019, Tr. 17:8-15 [#37], when Larios

and others met with a confidential witness ("CW") in the District of Massachusetts and arranged for

a delivery of fentanyl to the CW. Id. at 17:16-19. In November 2019, the CW received 17 kilograms

of a substance containing fentanyl which was delivered on a tractor trailer truck by one of Larios'

co-defendants in this case. Id. at 17:20-25. Later, Larios directed some of his co-defendants in this

case to collect payment for the fentanyl from the CW; the government arranged for it to appear that

$500,000 dollars was transferred to Larios' co-defendant, but the money was then intercepted

(presumably by the government). Id. at 18:7-13. In other words, no money was actually received for

the 17 kilogram delivery.

 The DEA obtained wiretap authorization to listen to Larios' calls and in January 2020, as a

result of that wiretap surveillance, the DEA learned of and was able to intercept delivery of 23

kilograms of cocaine; this cocaine was being transported by the same driver and in the same truck

as the fentanyl delivery. Id. at 19:1-7.

 In February 2020, Larios directed another one of his co-defendants in this case to travel to

Boston to meet with the CW; the CW paid $65,000 to Larios' co-defendant, this money was to go

towards the debt associated with the November 2019 fentanyl transaction. Id. at 18:14-17.

 In August 2020, Larios traveled to Boston again and met with the CW; the CW paid Larios

another $3,000 and later accepted delivery of another six kilograms of a substance containing

fentanyl; the fentanyl was delivered by the same driver and via the same truck as the November

2019 fentanyl transaction and January 2020 cocaine transaction. Id. at 18:18-25.

Agent Tully also proffered evidence that Larios had traveled back-and-forth to Mexico; however, Tully could not state how frequently Larios traveled, and stated Larios used his own name when traveling into the United States from Mexico. Id. at 20:4-15. Agent Tully stated that there was evidence from the wiretap recording Larios meeting with members of a drug trafficking organization and discussing the need for the CW to make good on the payment for the 17 kilograms of fentanyl. Id. at 20:11-15.

Agent Tully also testified that during the execution of search warrants for Larios' business and residence, agents found two guns—one registered to Larios and the other unregistered—approximately 1,000 rounds of ammunition, a hydraulic press, and a kilogram mold.[2] Id. at 21:1-15; 29:12-17. Evidence was also proffered that, during the search of Larios' home, agents found between 25 and 30 phones. Id. at 12:20-25.

Larios' counsel relied on the Pretrial Services Report to support his request that the Magistrate Judge release Larios with conditions. According to that report, Larios is 40-years old; he has a very limited criminal history, a single misdemeanor conviction in 2005 for which he received probation; he is a United States citizen; he was born in Los Angeles and has lived in that area his entire life; he has lived in the same house in Compton, California, for the last four or five years; he and his wife have two adolescent children and his wife is pregnant; he is not on probation or parole; he graduated from high school and earned a degree from a community college; and he owned a small trucking business. Pretrial Services Report 2-3; see also Tr. 35:17-36:4 [#37]. Larios' counsel elaborated that Larios wished to attend his son's confirmation which was scheduled for the Monday following his detention hearing and that Larios' wife was 7 months pregnant; counsel also stated

---

[2] Agent Tully testified that he was familiar with these types of molds and, in his experience they were always used for packaging drugs. Tr. 30:15-31:13 [#37].

that members of Larios' family would sign surety bonds in the amount of $60,000. Tr. 36:12-23 [#37].

After hearing testimony and counsels' argument, the Magistrate Judge found there were conditions that could be fashioned to release Larios. Id. at 38:10-11. The Magistrate Judge ordered Larios released on a $60,000 appearance bond with affidavits of surety without justification and ordered him confined to home detention with location monitoring via voice identification.[3] See Proceedings Sheet in Case Number 21-MJ-2474-DUTY-1 [#17-1].

After the Magistrate Judge ordered Larios released with conditions, the government sought a stay of that order pending an appeal to this court, Tr. 44:5-9 [#37], and the Magistrate Judge stayed the release for 48-hours. Id. at 44:12-16.

On May 21, 2021, the day the stay was set to expire, the government filed its first Motion to Revoke Release Order and For an Emergency Stay [#15]. The court denied without prejudice the first Motion [#15]. See Elec. Order [#16]. Late that afternoon, the government filed a Second Motion to Revoke Release [#17]. The court then stayed the Magistrate Judge's release order pending a hearing on the government's Second Motion [#17]. Order [#18].

The court held the hearing on the Second Motion [#17] on May 27, 2021. During the hearing, counsel for Defendant stated that Larios would be able to provide $119,000 (instead of the $60,000 that was mentioned during the detention hearing before the Magistrate Judge) for an initial bond and suggested there were additional conditions the court could impose on Larios, beyond those imposed by the Magistrate Judge, to reasonably assure Larios would be present for all proceedings and would not pose a risk to the community. Defendant's counsel also offered documents in response to the government's argument that Defendant's trucking business was no

---

[3] The Magistrate Judge also allowed Larios to leave his home to go to church once a week and imposed other standard conditions.

4

longer managed by the Defendant and was suspended, and requested that Defendant be permitted to attend his godson's upcoming baptism.

II. Legal Standard

Title 18, U.S.C. § 3145(a) states that "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." Upon such a motion, the court's review of a magistrate judge's release order is de novo. See United States v. Tortora, 922 F.2d 880, 884 n.4 (1st Cir. 1990).

Under the Bail Reform Act of 1984, a judicial officer may order a defendant detained pending trial if the government establishes (1) by clear and convincing evidence that a defendant is a danger to the community, or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight. 18 U.S.C. § 3142(f); see United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); see also United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). The judicial officer may then detain the defendant pending trial only if the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e).

In making this determination the judicial officer must consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance [or] firearm;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including
  A. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,
  B. whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would

be posed by the person's release . . .

18 U.S.C. § 3142(g).

Where, as here, an indictment alleges an offense under the Controlled Substances Act punishable by ten or more years' imprisonment, a presumption attaches under 18 U.S.C § 3142(e)(2) that no condition or combination of conditions will reasonably assure the safety of the community. See United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987); United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988). "The presumption merely creates a burden of *production* on the defendant; [ ] it does not shift the burden of persuasion which remains throughout the hearing on the government." United States v. Shea, 749 F. Supp. 1162, 1165 (D. Mass. 1990) (Once the presumption attaches, a burden to produce "some [relevant] evidence" shifts to a defendant.) (citing United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985); United States v. O'Brien, 895 F.2d 810, 815 (1st Cir. 1990)). A defendant's introduction of relevant evidence does not eliminate the presumption entirely. See Dillon, 938 F.2d at 1416. The presumption remains in the case for the court to consider alongside the government's ultimate burden of persuasion. Jessup, 757 F.2d at 381, 383.

III. Analysis

The government's position that Larios should be detained is grounded both on risk of flight and the safety of the community. Gov. First Mot. to Revoke Release 2 [#17-3].

A. Risk of Flight

In support of its argument that Larios poses a risk of flight that cannot be mitigated with conditions of release, the government groups Larios together with "other Mexican members of the DTO," cites Larios' "strong ties" to Mexico and his frequent travel to-and-from Mexico where the drug-trafficking organization is based, and the absence of legitimate ties to the District of

6

Massachusetts. Id. at 11.[4] The government argues further that, if convicted, Larios faces a lengthy sentence (according to the government's calculations, between 292 and 365 months), and is not safety valve eligible. Id. The government contends that this also demonstrates a risk of flight that cannot be mitigated with conditions. Id. at 11-12.

Counsel for Larios argued that Larios' ties to his family and community in Los Angeles, as well as the significant bond that his family and friends would post, and lack of criminal history rebutted the presumption of detention and demonstrated that there were conditions that could be imposed that would account for risk of flight (and safety of the community). Tr. 36:23-37:6 [#37].

The court finds that the weight of the evidence against Larios, and the significant sentence he faces if convicted, weigh strongly towards establishing a flight risk. The absence of legitimate ties to Massachusetts is irrelevant where Larios has strong ties to California. The court finds other facts weigh against a risk of flight: Larios is an American, not a Mexican, with two American children and a third child on the way; he was born and raised and has spent his entire life in the Los Angeles area, has a high school diploma, and attended some college there; his family and friends in the Los Angeles area willing to post bond in the amount of $119,000; and he has very limited criminal history.

The government references Defendant's "strong ties" to Mexico and hinted at Mexican property or bank accounts, but has offered no evidence of any ties to Mexico (other than the alleged criminal activity). The government has also noted Defendant's frequent travel to Mexico, but has offered no grounds as to why any risk of travel to Mexico could not be mitigated by location monitoring and home confinement, where Compton, CA, is a more than two hour drive from the Mexican border.

---

[4] The government states between January 2020 and April 2021, Larios made "over a dozen crossings" by foot or by plane, and that on May 18, 2021, the day before his arrest, he crossed by foot to Mexico and returned the same day. Gov. First Mot. to Revoke Release 11 [#17-3].

In sum, the court finds that a combination of conditions, including the proposed $119,000 bond, home detention with location monitoring, and surrendering of his passport, would reasonably assure the appearance of the Defendant as required.

B.  Danger to the Community

The government argues that Larios' "long-term and ongoing leadership role in a [drug trafficking organization] that transports multi-kilogram truckloads of drugs throughout the country establishes that he is a danger to the community."[5] The court finds that the government has met its burden to show, by clear and convincing evidence, that Larios' release would pose a danger to the safety of other persons.

First, the government's proffered evidence supports the assertion that Larios had a leadership role in a drug trafficking organization, directing the delivering of very large quantities of fentanyl, and that his truck was also used for the delivery of cocaine. Second, the proffered evidence that Larios met with alleged leaders of the drug trafficking organization in Mexico makes it unlikely that this was a new role. Evidence of Larios' leadership role is relevant in evaluating the nature of the charges, the weight of the evidence against him, and the seriousness of the danger that his release would pose under 18 U.S.C. § 3142(g)(1), (2), and (4). See United States v. Zannino, 798 F.2d 544, 547 (1st Cir. 1986) ("Zannino played a continuing leadership role in mob activities . . . directing illegal activities through communications with associates" even while in a hospital); Shea, 749 F. Supp. at 1169 (defendant's leadership role was a significant factor in evaluating the dangerousness his release would pose). Third, that numerous phones were located in his home and he was recorded directing the use of different phone numbers suggests that he is skilled at hiding his

_____

[5] The government also argues Larios is a danger to the community because of the guns found during the execution of the search warrants. Gov. First Mot. to Revoke Release 10 [#17-3]. As the guns have now been removed from the home and business, and the government has suggested no history of violence on Larios part, the court finds that guns do not present a sufficient basis for detention.

activities and the court has not identified a condition of release that would adequately guard against this sort of activity. Finally, that a large amount of money apparently is still due to the drug trafficking organization gives rise to the concern that Larios may be compelled to engage in criminal activity if he is released. These factors leave the court to conclude that his release poses a danger and "no condition or combination of conditions . . . will reasonably assure the . . . safety of any other person in the community." 18 U.S.C. § 3142(e)(1).

IV. Conclusion

For the aforementioned reasons, the government's Second Motion [#17] is ALLOWED and Larios is ORDERED detained.

IT IS SO ORDERED.

Date: May 28, 2021

/s/ _____
United States District Judge

9