UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | *   Criminal No. 1:21-cr-10118-IT |
| JOSE LARIOS, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER
August 18, 2021

TALWANI, D.J.

After this court ordered Defendant Jose Larios detained, see Mem. & Order [#41], Larios filed a Motion for Reconsideration [#65]. For the reasons that follow, the Motion [#65] is DENIED.

I.   Background

Larios is charged in an Indictment [#1] with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A)(vi) and money laundering conspiracy in violation of 18 U.S.C. § 1956(h). During Larios' initial appearance on May 19, 2021, the government moved for detention on dangerousness grounds pursuant to 18 U.S.C. § 3142(f)(1)(C) (Larios is charged with a controlled substance violation for which the maximum penalty exceeds ten years) and on risk of flight grounds pursuant to 18 U.S.C. § 3142(f)(2)(A); following a detention hearing, the Magistrate Judge ordered Larios released with conditions. See Proceedings Sheet in Case Number 21-MJ-2474-DUTY-1 [#17-1]. The government then appealed the Magistrate Judge's decision. Second Motion to Revoke Release [#17]. This court held a hearing on the Second Motion to Revoke Release [#17] on May 27, 2021, and on May 28, 2021, ordered Larios detained. Mem. & Order [#41].

On July 6, 2021, Larios filed a Motion for Reconsideration [#65]; on July 14, 2021, the government filed an Opposition [#70]; and a hearing on the Motion [#65] was held on July 22,

2021.

II.     Prior Findings and Conclusions

This court's prior Memorandum and Order [#41] details the background, evidence and argument presented at the initial detention hearing and before this court, the law relating to the Bail Reform Act, and the court's conclusion that Larios' release poses a danger and "no condition or combination of conditions . . . will reasonably assure the . . . safety of any other person in the community." 18 U.S.C. § 3142(e)(1).

III.    Legal Standard

Defendant has styled his Motion [#65] as a motion for reconsideration and the court understands it as a request to reopen the detention hearing and consider additional evidence; this requires that Larios satisfy the requirements of 18 U.S.C. § 3142(f).

Title 18 United States Code Section 3142(f) provides in relevant part that a detention hearing:

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.[1]

Whether new information establishes that conditions exist which will reasonably assure the safety of any other person and the community depends upon consideration of the factors set forth in 18 U.S.C. § 3142(g). See United States v. Miller, Crim. No. 16-40026-TSH, 2017 WL 841277 at *2 (D. Mass. Mar. 3, 2017). Those factors are the nature and circumstances of the charged offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the danger to other persons posed by the person upon release. 18 U.S.C. § 3142(g).

---

[1] The court previously found there were conditions that would reasonably assure the appearance of Larios as required, see Mem. & Order 6-8 [#41], accordingly, in this order, the court addresses the danger to the community only.

IV.   Proposed Conditions of Release and Proffered Facts

In his Motion [#65], Larios proffered additional facts and provided proposed conditions of release to support his contention that there are conditions which could be imposed to assure the safety of the community.

Larios proposes release on the following conditions:

- Home detention at his mother's residence 24 hours a day/7 days a week, leaving the home only with authorization from Pretrial Services;
- Electronic monitoring with Global Positioning Systems;
- Contact restricted to Larios' attorneys and individuals approved by the court;
- His mother's residence would have a single phone and telephone line; Larios would only communicate with people approved by the court; approved visitors would have to leave their phones behind;
- At Larios' expense, install and maintain 24-hour video surveillance of the entrance of the house and provide access to the government and Pretrial Services;
- Surrender passport and agree to not seek or obtain a new passport;
- Execute an agreement consenting to extradition to the United States and waive all rights to not be extradited;
- Agree to forfeit $550,000 collateralized by Larios' father's real property and the real property of Larios' partner's parents upon court determination that Larios violated any condition of release;
- Agree to subject to unannounced searches of person and residence; and
- Report daily by telephone to Pretrial Services.

Mot. 2-4 [#65]. Larios also provided the following facts to support his request that the court reconsider the issue of detention:

- As of July 13, 2021, Mr. Larios had not been vaccinated against COVID-19. Id. at 2; see also Def.'s Status Report [#67].[2]

- Larios suffers from asthma and high blood pressure and takes medication for both; these conditions put him at a higher risk of serious illness or death should he contract COVID-19. Mot. 2, 11 [#65].

- Larios has no major assets and lived in a modest home prior to his arrest. Id. at 8.

- Larios is not alleged to have made any of the arrangements concerning the price and quantity of drugs ordered by the cooperating witness in October 2019. Id.

- When Larios traveled to Massachusetts in October 2019, he used his real name to book travel arrangements. Id.

- Larios has a close relationship with his family and has been a provider and an active member of his community in the Los Angeles area. Id. at 9-11; see also Letter from Deisy Larios [#65-1]; Letter from Josefina Pacheco [#65-2]; Letter from Leticia Velasquez [#65-3]; Letter from Jose Larios [#65-4]; Letter from Father Ernesto Jaramillo [#65-5].

- Larios provided details about his work history, including the jobs he has held since high school, and information about his trucking company, including the fact that, as far as counsel knows, when the trucks belonging to Larios' company were searched, there was "no seizure of drugs or cash." Mot. 9-10 [#65].

- Larios also states there is no evidence he is expected to personally pay the approximately $500,000 owed to the drug trafficking organization. Id. at 14.

---

[2] Larios was fully vaccinated on July 28, 2021. Gov. Status Report [#84].

V.      Discussion

Larios argues that the strict conditions he has proposed mirror those the First Circuit found would reasonably assure the safety of the community from a Mafia boss and that such conditions would reasonably assure the safety of the community from Larios. Id. at 14-15 (citing United States v. Patriarca, 948 F.2d 789, 794 (1st Cir. 1991)).

The government opposes release, arguing the proposal is not based on new information, that even if it is, the new information is not material, and that Defendant remains an unacceptable risk to the community. As to the proposed conditions, the government argues "[n]one of the ten proposed conditions of release, even if they were all possible, can change the evidence of the [D]efendant's long-term leadership role in a dangerous drug trafficking organization." Opp'n 8 [#70].

The court finds the facts provided and proposed conditions of release bear on the question of whether conditions exist that will reasonably protect the community. While some of these facts and proposed conditions may have been known to Defendant at his initial detention hearing on May 19, 2021, and his hearing before this court on May 27, 2021, at least some of the proposed conditions are new. Accordingly, the court considers here the newly proffered facts and proposed conditions of release and reconsiders the original information in light of the additional material.

The court previously found the weight of the evidence against Larios was substantial, supported the assertion he had a leadership role in a drug trafficking organization and directed delivery of large quantities of fentanyl, and that his role was not new. Mem. & Order 8 [#41]. The court also found evidence suggesting Larios is skilled at hiding his activities and could not identify a condition of release that would guard against this activity. Id. at 8-9. Finally, the court found a large amount of money was due to the drug trafficking organization and expressed the concern that if Larios were released, he would be compelled to engage in criminal activity to repay this debt. Id. at 9.

The Defendant argues that Larios' use of his real name to travel to Massachusetts and the absence of evidence that he made any of the arrangements regarding the price and quantity of the October 2019 shipment counter the evidence proffered by the government showing his level of involvement. The government proffers evidence that Larios coordinated drug shipments for the drug trafficking organization from Los Angeles to other parts of the United States and in so doing directed his co-defendants Torres, Jauregui, and Vega Aponte to retrieve and deliver drugs and to collect and launder money. Opp'n 4 [#70]; see also Affidavit ¶¶ 22b-22u (describing interceptions of Larios telling co-defendants and others how to launder drug proceeds, directing individuals to locations where they could pick up drugs and drug proceeds, explaining to individuals, including co-defendants, where to pick up vehicles to transport drugs, and inquiring about drugs for purchase); ¶ 26 (intercepted call recording Larios speaking to an unknown male who was robbed of a kilogram of drugs, Larios tells the unknown male Larios will cover the balance the unknown male owes for that kilogram and will also provide a replacement kilogram of drugs) ¶ 34 (Larios intercepted speaking to a family member and explaining how to conceal the source of a wire transfer using MoneyGram and further explaining that this is a way Larios sends money to Mexico). Accordingly, the court still finds Larios' role in the drug trafficking organization is relevant to its consideration of the nature of the charges, the weight of the evidence, and the seriousness of the danger his release would pose and weighs against release. See 18 U.S.C. § 3142(g)(1), (2), and (4).

Turning next to the court's concern about Larios' ability to hide his illegal activities, the court finds two of Larios' proposed conditions of release partially address this concern: (1) permitting a single telephone line and telephone in his mother's house and (2) upon a finding Larios violated any condition, he would forfeit the $550,000 secured by real property. After considering these conditions, the court finds they are sufficient to guard against the risk Larios will use the single telephone in the house, but the conditions are insufficient to guard against the risk that a

6

visitor to Larios' mother's home will bring Larios a phone and that he will use that phone, undetected, to engage in illegal activities. Moreover, these conditions do not address the broader risk that Larios will use other methods to conceal his illegal activities, including the risk that he will ask his family members and/or other visitors to his mother's house to relay messages on his behalf relating to drug trafficking business.

The court finds the proffered evidence that Larios does not personally owe a large amount of money to the drug trafficking organization insufficient to change the court's assessment that the outstanding money due weighs heavily against releasing Larios. While Larios states the government's evidence does not show he was an agent of the purchaser of the drugs or someone who had an ownership interest in the drugs, the court is left with the facts that there is a large sum of money due to the drug trafficking organization; Larios is alleged to have been involved in the transactions that led to this loss; and this may lead Larios to feel compelled to engage in criminal activity to repay the debt.

In sum, the court finds the newly proffered facts and proposed conditions insufficient to convince the court that Larios would not be a danger to the community. The charges here are very serious, they involve large quantities of fentanyl, and allegations that Larios was a leader of a drug trafficking organization. While Larios has proposed a condition that would require a large sum to be forfeited if he violated any condition, given the seriousness of the charges, the weight of the evidence, the ten-year mandatory minimum Larios faces,[3] and the danger posed by Larios' release should he engage in criminal activity, the court is not convinced the forfeiture reasonably assures the safety of the community. Cf. Patriarca, 948 F.2d at 791-92 (Patriarca released on conditions with a large forfeiture amount, but was not charged with "any personal acts of violence, nor with obstruction of justice, nor with any narcotics offense" and faced a guideline sentence of five to six

---

[3] Defendant disputes the government's assertion that he is not safety valve eligible. Mot. 8 [#65].

years.).

VI.   Conclusion

For the aforementioned reasons, Defendant's Motion [#65] is DENIED.

Date: August 18, 2021                                          /s/ Indira Talwani
                                                                      United States District Judge