UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>(1) JOSE LARIOS, )<br>(2) RAFAEL TORRES, and )<br>(5) XINGRONG WU, a/k/a "Danny," )<br>)<br>Defendants. ) | Case No. 21-CR-10118-IT |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT
LAW ENFORCEMENT LAY OPINION TESTIMONY**

The government anticipates that it will introduce opinion testimony from multiple law enforcement officers concerning their observations of various matters related to narcotics trafficking and money laundering and the opinions that they drew from those observations based on their experience and training. The government anticipates that this testimony may cover the following topics, among others:

- Testimony from one or more law enforcement witnesses, who are experienced drug investigators, concerning the various roles and responsibilities of individuals involved in drug trafficking organizations and drug transactions; the manner in which drug trafficking and money laundering organizations operate, including the manner and means used to store narcotics and proceeds from the sale of narcotics; the manner and means for converting drug proceeds from cash and transmitting those proceeds internationally; the utilization of co-conspirators and associates to receive, store, transport, retrieve, and distribute controlled substances; the use of cellular telephones and code phrases and language used by drug traffickers to communicate about controlled substances, orders, prices, payments, and other matters; the use of multiple cell phones and the regular dropping or switching of cell phones to avoid law enforcement detection; the use of fictitious subscriber information for cell phones; the wholesale and street-level prices of fentanyl and cocaine in the Boston area during the charged conspiracy; the status of Mexico as a source area for the shipment of cocaine and fentanyl to the continental United States; the use of mail and shipping companies by drug trafficking organizations to ship drugs from Mexico to the continental United States and the methods used to disguise the true identity of the senders and recipients to avoid law enforcement detection; drug quantity for personal use versus distribution; and the methods used to investigate narcotics distributors including the use of location data from cellular phones, or "pings," and from GPS trackers placed on vehicles, all obtained pursuant to search warrants.

## ARGUMENT

Fed. R. Evid. 701 governs opinion testimony by lay witnesses. Under the rule, a non-expert witness may testify in the form of opinion if the testimony is:

> (a)   rationally based on the witness's perception;
>
> (b)   helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701; *see also United States v. Diaz-Arias,* 717 F.3d 1, 11-13 (1st Cir. 2013) (allowing the government to introduce lay opinion testimony from a Spanish-speaking state trooper because it was helpful to the jury in drawing the inferences and conclusions necessary to identify the defendant's voice); *United States v. Albertelli*, 687 F.3d 439, 446–47 (1st Cir. 2012) (lay opinion must be based on the witness's perception, potentially helpful to the jury, and not based on expert knowledge). "[T]he touchstone for the admissibility under Rule 701 of such lay-opinion testimony is whether the testimony has the 'potential to help the jury.'" *United States v. Spencer,* 873 F.3d 1, 14 (1st Cir. 2017) (quoting *Albertelli,* 687 F.3d at 447). "Helpful testimony is typically based on the lay expertise a witness personally acquires through experience, often on the job." *Id.* (internal quotation and citations omitted).

Courts regularly permit law enforcement witnesses to testify about various matters within their experience and training as lay witness testimony under Rule 701. Such testimony often concerns the modus operandi of drug distribution. *United States v. Moon,* 802 F.3d 135, 147–48 (1st Cir. 2015) (permitting officer's testimony that drugs appeared to be heroin and crack cocaine and that drug dealers often possess firearms was properly admitted under Rule 701); *Spencer,* 873 F.3d at 13–14 (permitting officers' testimony that defendants' patterns of conduct and speech were,

on the basis of their experience, believed to be typical of those working together as a team in selling drugs). Courts also permit testimony regarding the use of multiple cell phones with fictitious subscriber information. *United States v. Valdivia*, 680 F.3d 33, 50–51 (1st Cir. 2012) (permitting officer's lay opinion testimony that "traffickers often list unrelated third parties as their telephones' subscribers"); *United States v. Velazquez-Fontanez*, 6 F.4th 205, 224–25 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 500 (2021), and *cert. denied sub nom. Resto-Figueroa v. United States*, 142 S. Ct. 1164 (2022) (permitting agent's testimony that drug traffickers "often carry multiple cell phones and use flip phones as temporary 'burner' phones to evade law enforcement efforts to track and intercept drug-related communication" where expert witness gave similar testimony). Additionally, courts regularly permit experienced narcotics investigations to provide lay opinion on the methods traffickers use to move drugs across borders. *United States v. Agramonte-Quezada*, 30 F.4th 1, 10, 20-21 (1st Cir. 2022) (permitting agent's testimony regarding "how cocaine travels to [U.S. territory] . . . how drug trafficking organizations operate in [U.S. territory], how they smuggle drugs across the border, and how they choose couriers that they know and trust").

"[A] police officer noticing patterns of behavior across criminal operations uses straightforward logic to conclude a defendant's behavior fits within those patterns and thus, does not need to be qualified as an expert." *United States v. Vega,* 813 F.3d 386, 394 (1st Cir. 2016). Testimony by a law enforcement agent about the drug quantity signifying distribution as opposed to personal use, the tools of the drug trade, and transportation of drugs are all admissible as lay testimony. *See United States v. Maher,* 454 F.3d 13, 24 (1st Cir. 2006) (holding that an officer's testimony that, based on his experience, certain post-it notes were likely drug orders and the number "4" likely referred to a quantity of drug found by law enforcement "did not cross the line

to become expert testimony"); *United States v. Ayala–Pizarro,* 407 F.3d 25, 29 (1st Cir. 2005) (holding that an officer's testimony that heroin seized at drug points was typically packed in aluminum decks and that the heroin seized in the case was packaged in such decks was Rule 701 testimony).

Agent testimony under Rule 701 is also admissible to explain coded language used by drug traffickers. *See, e.g., United States v. Belanger,* 890 F.3d 13, 27–29 (1st Cir. 2018) (allowing testimony by a Special Agent in the Drug Enforcement Agency to help the jury understand drug slang in recorded phone calls); *United States v. Dunston,* 851 F.3d 91, 97 (1st Cir. 2017) (finding that the admission of a law enforcement officer's testimony "was comfortably within the ambit of the district court's discretion" because the officer was "knowledgeable about the idiom of the drug trade and, in particular, the vernacular of this group of miscreants.").

Here, the anticipated law enforcement testimony will explain the meaning of slang or coded language of drug dealers, the common roles within drug trafficking and money-laundering organizations, the prices for fentanyl and cocaine, the use of multiple cell phones with fictitious subscriber names, the methods of shipping fentanyl and cocaine from Mexico to the continental U.S., among others. A typical juror is unlikely to be familiar with the practices of drug traffickers and money launderers engaged in the shipment of fentanyl and cocaine from Mexico to the continental United States, the methods that money launders use to collect and transmit drug proceeds back to Mexico, and the methods by which the traffickers attempt to evade law enforcement detection. The proposed law enforcement testimony is necessary to provide the jury

with a thorough understanding of these issues and will be helpful to jurors' determination of the facts at issue in this case. This testimony, therefore, should be admitted.

                Respectfully submitted,

                JOSHUSA S. LEVY
                Acting United States Attorney

      By:   */s/ Stephen W. Hassink*
            Leah B. Foley
            Stephen W. Hassink
            Assistant United States Attorneys

Date: June 20, 2023

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                */s/ Stephen W. Hassink*
                Stephen W. Hassink
                Assistant United States Attorney

Date: June 20, 2023