UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.      )<br>)<br>(1) JOSE LARIOS,          )<br>(2) RAFAEL TORRES, and    )<br>(5) XINGRONG WU, a/k/a "Danny,"  )<br>)<br>Defendants    ) | Criminal No. 21-CR-10118-IT |

### GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through the Acting United States Attorney for the District of Massachusetts, Joshua S. Levy, and Assistant United States Attorneys Leah B. Foley and Stephen W. Hassink, respectfully submits this trial brief to identify relevant issues regarding the trial scheduled to begin on July 17, 2023 in connection with the above-captioned matter.

1. **The Indictment**

Defendants Jose LARIOS, Rafael TORRES, Angel VALENZUELA, a/k/a "Jose Vega Aponte," and Marco JAUREGUI are charged in Count One of the Indictment, with conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl and five kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 846. Count One further alleges that 400 grams of fentanyl were reasonably foreseeable by and are attributable to LARIOS, TORRES, and JAUREGUI, and five kilograms or more of cocaine were reasonably foreseeably by and are attributable to JAUREGUI and VALENZUELA. LARIOS, TORRES, JAUREGUI, and XINGRONG WU are charged in Count Two of the Indictment with conspiracy to launder money.

2. **Statement of Facts**

In October 2019, the Drug Enforcement Administration ("DEA") began an investigation into a Mexico-based drug trafficking organization ("DTO") after receiving information from a confidential source that the DTO could supply multi-kilogram quantities of fentanyl to buyers in the United States, including in Massachusetts. At the direction of investigators, the confidential source passed the phone number for a DEA cooperating witness ("CW") to the DTO. Afterwards, the CW engaged in negotiations with Mexico-based members of the DTO to arrange the transport of multiple kilograms of fentanyl to Massachusetts.[1] After speaking with one of the Mexico-based members, unindicted co-conspirator Alejandro LNU, VALENZUELA called the CW to arrange the delivery of the kilograms of fentanyl. A few days after the call with VALENZUELA, LARIOS called the CW to arrange a meeting in Massachusetts on October 31, 2019 to finalize the details of the delivery.

On that date, LARIOS and another unindicted coconspirator flew from California to Massachusetts to meet with the CW and continue to discuss the eventual shipment of drugs. This meeting was audio/video recorded and all calls between the CW and LARIOS were consensually recorded. On November 2, 2019, LARIOS, the other man, and the CW met again to finalize the details of the fentanyl delivery. LARIOS provided a phone number for another coconspirator and charged defendant, JAUREGUI, and stated that the pickup would take place the following day, November 3, 2019.

On November 3, 2019, the CW, under the surveillance of investigators, met with JAUREGUI, a truck driver, in a parking lot in Assonet, Massachusetts and picked up the drugs.

---

[1] All calls between the CW and members of the DTO detailed herein were consensually recorded.

After testing in the DEA laboratory, the lab confirmed the drugs were fentanyl and weighed 17 kilograms.  Now, the CW was required to pay LARIOS and Alejandro for that fentanyl.

Alejandro provided the phone number and the serial number for a dollar bill, a common form of receipt among money launderers, to the CW.  The phone number was for WU, the man designated to pick up the payment for the fentanyl. On November 4, 2019, after arranging the meeting with WU, an undercover officer (the "UC") met with WU and provided him with a duffle bag full of sham money.  After showing the UC the same dollar bill serial number that the CW had received from Alejandro, WU took the duffle bag. DEA Agents quickly arrested WU and he agreed to be questioned.  WU confirmed that he had made many other money pickups similar to this one. After being released, WU immediately threw away the phone he had used to coordinate this money pickup.

After this fentanyl transaction and money drop-off, investigators obtained a warrant to obtain the precise location data for the phones used by VALENZUELA and JAUREGUI. On January 2, 2020, they observed that the location activity of JAUREGUI's phone indicated it was in Massachusetts. Investigators followed the location data for VALENZUELA's phone, which led them to the same commercial parking lot in Woburn, Massachusetts where JAUREGUI's phone was also located. Investigators observed VALENZUELA retrieve two weighted duffle bags from JAUREGUI's truck, which he placed in the vehicle in which he had arrived. Investigators followed VALENZUELA after the transfer, stopped a vehicle he was in, and recovered the two duffle bags, which contained 23 kilograms of cocaine.

In January 2020, investigators obtained judicial authorization to intercept a phone used by LARIOS. LARIOS continued to reach out to the CW to demand payment for the fentanyl. LARIOS used numerous different phones to contact the CW. Investigators intercepted LARIOS calling from

California and LARIOS and Alejandro calling from Mexico to make these demands. Eventually, at investigators' direction, the CW agreed to make a partial payment for the fentanyl. To receive the payment, TORRES flew from California to Boston to meet with the CW. On February 14, 2020, TORRES and the CW met while being surveilled by investigators. The CW provided a partial payment of $65,000 to TORRES during that meeting. TORRES was intercepted over LARIOS's phone discussing the money pickup from the CW.

The calls between LARIOS and the CW continued. Eventually, the CW agreed to meet with LARIOS in Boston for the delivery of an additional six kilograms of fentanyl and another partial payment. LARIOS and TORRES flew to Boston for this meeting. On August 19, 2020, LARIOS and TORRES met with the CW and discussed the next drug shipment and an additional money payment. Later that day, the CW met with JAUREGUI and received an additional shipment of fentanyl. These drugs also tested positive in the DEA laboratory for the presence of fentanyl and weighed six kilograms.

In May 2021, investigators arrested the defendants charged in the Indictment. LARIOS, TORRES, and JAUREGUI were arrested in California, and WU and VALENZUELA were arrested in Massachusetts. Pursuant to search warrants, investigators also searched LARIOS's and TORRES's residences, and the trucking business owned by LARIOS. During the search of TORRES's residence, investigators seized two handguns. During the search of LARIOS's residence and trucking business, investigators seized firearms, dozens of cell phones, and observed and photographed a kilogram press (from the trucking business).

3. **Evidentiary Issues**

   a. *Law Enforcement Lay Opinion Testimony:*

The government plans to call several law enforcement agents who will offer their lay opinion regarding certain aspects of the drug trade under Federal Rule of Evidence 701. Specifically, the government plans to offer testimony based on these agents' experience and training in narcotics investigations <u>and</u> involvement in the investigation that led to the charges, on the following topics: the *modus operandi* and structure of drug-trafficking organizations, the tools of the drug trade, including testimony regarding the items seized from searches of LARIOS's residence and business and TORRES's residence, the methods of transporting and sending drug proceeds, the meaning of certain slang words used by drug traffickers, the street prices of fentanyl and cocaine, and the quantities of fentanyl and cocaine for distribution and personal use. The government has filed a separate motion *in limine* on this topic. The government will not seek to introduce the firearms that were seized from LARIOS's residence and business and from TORRES's residence in its case-in-chief.

   b. *Co-Conspirator Statements*

Through the testimony of the CW and law enforcement agents, as well as recordings and preserved text messages, the government plans to offer statements made by co-conspirators in this case, including calls between Alejandro and the CW, WU and the CW, and intercepted calls between LARIOS and TORRES, under Federal Rule of Evidence 801(d)(2)(E) and *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977). The government has filed a separate motion *in limine* on this topic.

   c. *Translations*

The recordings and text messages the government intends to offer are in Spanish language. The government plans to offer translations of these exhibits as substantive evidence to be provided

5

to the jurors during deliberations under *United States v. Rengifo*, 789 F.2d 975, 983 (1st Cir. 1986). The government has filed a separate motion *in limine* on this topic.

4. **Expert Witness Testimony**

   a. *DEA Chemist*:

Absent stipulations, the government intends to introduce evidence from a DEA chemist regarding the testing of the fentanyl and cocaine delivered to the CW during the course of this investigation. The government has produced the drug certifications, testing and analysis documents, and the chemist's CV.

5. **Stipulations of Fact**

The parties have not reached any stipulations at this time. The parties have had preliminary discussions about possible stipulations regarding chain of custody of drug evidence and the type and quantity of the drugs seized in this case. Should the parties reach agreement on any of these stipulations prior to trial, the parties will file a signed copy of the agreed-to stipulations on the docket.

6. **Jury Instructions**

The government has filed its proposed jury instructions.

7. **Special Arrangements**

   a. *Paralegal*. The government respectfully requests that, in addition to trial counsel, the Court allow Julia Gelman, a paralegal from the United States Attorney's Office, to sit at counsel

table.  Ms. Gelman is an integral member of the prosecution team and will assist the undersigned counsel in their efforts to introduce the physical evidence and exhibits in this case.

    b. *Witnesses*.  The DEA Chemist is traveling from out of state.  All other witnesses are local.  Depending on witness schedules and the actual date evidence begins, the government may request that certain witnesses be allowed to testify out of order.

    c. *Case Agent*.  The government requests that the Court designate DEA Task Force Officer Brian Simpkins as case agent.  The government anticipates that TFO Simpkins will be the first witness in its case-in-chief to testify and requests that after his testimony, he be allowed to sit at counsel table as necessary to assist government counsel.

    d. *Length of Trial*.  Barring any stipulations, the government expects its case-in-chief to last approximately eight trial days, excluding jury selection.

Dated: June 27, 2023

              Respectfully submitted,

              JOSHUA S. LEVY
              Acting United States Attorney

      By: */s/ Leah B. Foley*
         Leah B. Foley
         Stephen W. Hassink
         Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                       */s/ Leah B. Foley*
                                       Leah B. Foley
                                       Assistant United States Attorney

Date: June 27, 2023